## Pittsburgh and Lake Erie Railroad Company
### *versus* Jones et ux.

1. The legislative grant of the franchise of a ferry gives only the right to maintain a ferry and to take tolls; it does not give the right to make a landing upon the property of a private person or upon a highway.

2. When through the construction of a railroad bridge the travel upon a public highway is obstructed, such obstruction is a public nuisance and the injury to the owner of a ferry whose landing is at the terminus of said highway can not maintain a private action for such obstruction, his injury, though greater in degree, being of the same character as that suffered by the public at large.

3. A. owned a ferry and held a leasehold in the landing thereof, the defendant constructed a railroad so as to materially interfere with the landing of boats. *Held*, that the measure of damages for which the defendant was liable was the difference between the value of the leasehold for the purpose to which it was applied, until the end of the term under ordinary circumstances, and its value for the same time as affected by the construction of the railroad, and that it was error to allow the recovery of damages for the depreciation of the value of the franchise unconnected with the leasehold

November 5th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No 1, of *Allegheny county:* Of October and November Term, 1884, No. 150.

Action on the case brought by T. C. Jones and Carrie V., his wife, in the right of and for use of the said Carrie V. Jones against the Pittsburgh and Lake Erie Railroad Company to recover damages alleged to have been suffered by the plaintiff by reason of the building of the defendants' railroad.

The declaration alleged that the plaintiff Carrie V. Jones was the owner of the William McKee Ferry over the Ohio river, that to successfully carry it on the plaintiff had in her possession a large steam ferry boat with appliances, employed large numbers of men, servants and agents, and had expended large sums in grading and maintaining the landings of the ferry, and has and had been for a long time engaged in the business of operating the ferry aforesaid, receiving tolls for ferriage; that on or about September 4th, 1878, the defendant well knowing the premises, entered upon the landing on the south side of the Ohio river and excavated and filled thereon and constructed its railroad tracks upon an artificial embankment or elevated trestle work, and maintained the same so as to hinder and obstruct the said landing so that vehicles, passengers, animals, freight, &c., could not at ordinary, and

much less at extraordinary stages of the water of the Ohio river be transported by the said ferry, by reason whereof the ferry was compelled to suspend business, and a large portion of the traffic which was accustomed to be transported on said ferry had been diverted and lost to the plaintiff.

On the trial the evidence showed that by Act of Assembly of April 16th, 1863, P. L. 507, William McKee, his heirs and assigns were granted the right to maintain a public steam ferry over the Ohio river from West Pittsburgh to Allegheny City, "from where his present landing now is, near Saw Mill Run, on the south side of said river, to his present landing at the termination of Chartier Street on the bank of said river . . . and the exclusive right and privilege to use said landings and the said river between the same as a public ferry"; that the said franchise became vested in 1875 in Carrie V. Jones; that in 1876 Mrs. Jones, then Carrie V. Kountz, obtained a lease for five years of a piece of ground situated at the foot of Main Street, Pittsburgh, to be used as a ferry landing; that a part of Main Street was also so occupied; that in July, 1878, the defendant, under an ordinance of the city of Pittsburgh, built a bridge for the purposes of its railroad crossing Main Street, which bridge interfered with landing from the plaintiff's ferry boat when there was thirteen or fifteen feet of water or over in the river, which was the case some fifteen or twenty days in the year; that in November, 1878, Mrs. Jones sold the boat and ceased to occupy the ferry. The plaintiffs claimed to recover the amount of permanent damage done to the ferry, and propounded to a witness the following question : "What in your judgment is the difference between the value of this ferry franchise before the construction of the railroad and its value after the railroad was constructed as affected by it?" The question was objected to ; the objection overruled ; whereupon the defendant excepted. (First assignment of error.)

The plaintiff presented the following points :

1. The plaintiff, by virtue of her ownership of the ferry franchise, designated in the Act of April 16th, 1863, in evidence, possessed an exclusive right to maintain a public steam ferry, as designated in said Act, and any interference with this ferry franchise by the defendant company, if it did so interfere, constitutes such a taking of private property for public use as is forbidden by the constitution of this Commonwealth, without just compensation paid or secured to the owner thereof, and the verdict should be for the plaintiff.

2. If the jury believe from the evidence that the defendant company has constructed its roadway over the landing which the plaintiff used as a landing under a franchise or grant of

the legislature of Pennsylvania, passed April 16, 1863, in evidence, at such an elevation as to practically deprive her of the use of said franchise or grant, when the Ohio river rises to a stage of thirteen feet or more, this fact is for the jury to consider as an element of damage in arriving at a verdict.

3. The defendant company being vested with the right of eminent domain, is liable to all consequential damages, which includes all damages other than those suffered by the actual taking possession of lands, and in ascertaining these damages to plaintiff, the jury are to consider all inconvenience and damage occasioned to plaintiff by reason of the loss of trade, and stoppage of ferry caused by the construction of the defendant's roadway.

4. The true rule for valuing the damages to plaintiffs' property is the difference between the value of the ferry franchise before the construction of the railroad, and its value after the railroad was constructed as affected by it.

5. If the jury believe from the evidence that the plaintiff's ferry franchise was damaged by reason of the construction of the defendant company's roadway, the amount of such damage is not a matter of discretion for the jury, but they should allow such compensation to plaintiff as they find from the evidence will compensate the loss she has sustained.

To which points the court made answer: "In so far as these points are affirmed by the general charge they are affirmed, and in so far as they are denied in the charge they are refused."

The defendant presented the following points:

1. That the Act of April 16th, 1863, by which the ferry claimed by plaintiffs was created, only gives to the owners of the ferry the right to maintain a ferry between certain points and to take tolls therefor, and did not give to William McKee, or the plaintiffs claiming under him, any right or title to the landing above low water mark at the terminus of the ferry.

2. That the plaintiffs have not shown any right or interest in or over the land occupied by the defendant company for its railroad, and therefore cannot recover in this case, and the verdict of the jury must be for the defendant.

3. That even if the construction of defendant's railroad across Main Street is an obstruction to travel thereon, still such obstruction would be a public nuisance, and the plaintiffs have not shown any special or peculiar injury therefrom not common to the public, and cannot recover for such obstruction, and the verdict must be for the defendant.

If the court should refuse to affirm the foregoing points then it is asked to charge:

4. That the measure of damages in this case is the actual

loss sustained by Carrie V. Jones, by reason of the defend-
ant's acts, in the operation of the ferry during the time that
she operated it after the construction of plaintiff's railroad,
namely, until November, 1878.

5. That the plaintiffs have not shown that any damage or
loss occurred during this period, and therefore the verdict
must be for the defendant.

6. That plaintiffs cannot recover in this case for permanent
depreciation or damage to their ferry by reason of the location
and construction of defendant company's railroad under its
right of eminent domain, and the jury should disregard all
testimony as to damages based on permanent depreciation.

To which points the court gave the same answer as had
been given to the plaintiff's points.

The general charge of the court was as follows.:

The plaintiff, Mrs. Jones, seeks to recover damages at
your hands for an injury to a franchise or ferry right possessed
by her, which right she claims was granted by an Act of Assem-
bly which has been read in your hearing.  She alleges she
had a title at the time of bringing this suit to the ferry plant
—water privileges and appliances to run the ferry, and she
alleges that in 1878 the defendant company, the Pittsburgh
and Lake Erie Railroad Company, built their road on piles or
trestles in front of her landing in such a manner as to inter-
fere with the use of it, to deprive her of business, and in such
a manner that when high water came she could not run the
ferry properly, nor could travelers with horses and wagons
get under the bridge which the railway company had built
over Main Street, in the city of Pittsburgh.  By reason of
these acts the plaintiff alleges that her franchise has been
damaged and her business injured.

Now there are some legal questions in this case that are of
a good deal of importance, which will be considered hereafter
by the court in banc.

It seems that in 1878, and for a long period before, the
plaintiffs had a landing with the ferry right, which right is
undisputed.  The evidence seems to indicate that Mrs. Jones
owns the franchise or charter alone. she having sold the boat
in 1878, but not the charter.  It is alleged that in 1878, or a
little prior to that, a public street was laid out, ending about
this place.  Some of the witnesses say the boat had been
landing there not more than fifty feet each way from it, for a
number of years under this charter, and when the street was
paved they moved the landing up to the street.  The railroad
came along, and it is alleged put down their piles in such a
manner that there was no place to go through except this
street, there being abutments above and piles on either side;

that even if the plaintiff had a right by a lease it would be impossible to get up; there was only one place of egress, and that was by a public street.

[Now, gentlemen, we say to you if you believe that the railroad company obstructed and damaged the landing by their location and building of the road where they did, across the street and across this place in front of their ferry right—and about this there is very little dispute—the evidence shows that there is great injury done, the plaintiff would be entitled to recover for that injury in this action.]

Then the only question remaining is what was the extent of the damage. Upon that you have heard testimony from a high amount down to almost nothing. The rule is this: You can only give damages for the loss of Mrs. Jones' business while she owned and ran it. She sold the boat and did not run the business, I think, after November, 1878. Of course, she can recover for no loss of business when her sister, Miss Katie Kountz, was running the boat, I mean as far as the business is concerned; loss in trade. She can recover for no loss in her business from 1878, when she sold the boat. It is claimed upon that question by the learned counsel for the defendant that there is no proof that she suffered any loss; on the other hand plaintiffs contend there is proof she did suffer some damage. You will have to examine the evidence and determine that fact; I cannot say that there is no evidence; but that does not affect the right if she had the franchise. That Mrs. Jones still owns, and whatever damage has been caused to that franchise by the building of this road up to the time of bringing her suit in 1884, she has a right to recover because it is an injury to her right, a right purchased by her, or given to her, it makes no difference which.

[The rule of damage is this: what has the value of her franchise, the franchise alone, been injured by reason of the construction of that railroad? It is alleged that it would not sell for as much as before the construction of the road by reason of this obstruction; that people cannot get their wagons on and off the ferry when there is a fifteen foot stage of water in the river; that for ten or fifteen days after, according to the testimony, they are deprived of the use of this franchise. You will determine from the evidence how much less the franchise is worth, how much the market value of it has been lowered by this obstruction; whatever that is the plaintiff would be entitled to recover.]

Some of the witnesses say the franchise would be damaged $5,000, some $20,000, $25,000, but those witnesses you will have observed valued the business as if Mrs. Jones was now running it. She is not entitled .to that, as I have said, but

only to her loss while she had it, as far as the business is concerned, in 1878, November, 1878, her sister owning the business from that time on. The plaintiff still owns the franchise, and the entire damage to it up to the time of bringing her suit she is entitled to.

In brief, gentlemen, the only question for you to determine is this question of fact.

The jury found a verdict for the plaintiff, and assessed the damages at $4,258.33, and judgment was subsequently entered on the verdict. The defendant took this writ assigning for error the admission of evidence as to the difference in value of the ferry franchise before and after the construction of the railroad (1st assignment); the refusal of the defendant's points (2d, 3d, 4th, 5th, 6th, and 7th assignments), the answer to the plaintiff's points (8th, 9th, 10th, 11th and 12th assignments;) the portion of the charge included above between the first pair of brackets (13th assignment); and the portion of the charge included above between the second pair of brackets (14th assignment).

*Reed* (with him *Knox*), for plaintiff in error.—The Act of legislature conferred no right upon McKee to occupy or use the landing against the riparian owner or against the defendant occupying the land by virtue of an agreement with said owner. There is no right, custom or prescription in this state by which one man can land or receive freight on waters freehold on the banks of a navigable river without his consent, even though it be on a public highway: Cooper *v.* Smith, 9 S. & R., 26; Chess *v.* Manown, 3 Watts, 219; Chambers *v.* Furry, 1 Yeates, 167; Bird *v.* Smith, 8 Watts, 434, the Commonwealth could grant such a right only on compensation made to the landowner: Root *v.* Commonwealth, 2 Out., 174. The rights of McKee under the Act necessarily ceased at the water's edge.

For the obstruction of a public highway no private person can maintain an action, unless he has received a special injury, distinct in kind from that suffered by the public: Buck Mt. Coal Co. *v.* Lehigh Coal Co., 14 Wr., 98; Reading *v.* Commonwealth, 1 Jones, 196; Black *v.* P. & R. R., 8 P. F. S., 253; P. & Ohio Canal Co. *v.* Graham, 13 Id., 296; Cumberland Valley Railroad Co.'s Appeal, 12 Id., 226; Rung *v.* Shoneberger, 2 Watts, 23; Mechling *v.* Kittanning Bridge Co., 1 Grant, 416; Flanagan *v.* Philadelphia, 8 Phila., 110. The plaintiff here has shown no special injury different from that to the public at large; if this had been the case of this obstruction of the river by a bridge, a private action could not have been maintained: Blackwell *v.* Old Colony R. R. Co., 122 Mass., 1; *a fortiori*, it cannot be maintained in the present

1 Amerman—14

case where the plaintiff's rights extend only to low water mark.

The constitutional provision requiring corporations invested with the power of eminent domain to "make just compensation taken, *injured* or destroyed by the construction" of their works: Const., Art. XVI., § 8, does not apply to a case like the present; it applies only where in a case of no actual taking, an action at law would have lain had the injury been committed by a private person. If this bridge had been built by a private person, no action would have lain on the part of a person not specially damaged. But if the plaintiff can recover at all, the court erred in its ruling as to the measure of damages. The plaintiff sold her ferry boat and ceased to operate the ferry four months after the construction of the bridge, since that time she has not received or charged rent for the ferry. The recovery should be confined to the loss actually suffered during those four months, and not extended to the permanent injury to the franchise.

*Winfield S. Wilson* (with him *George D. Riddle*), *contra*.— The jury having found that the plaintiff has been materially injured, the only question which can properly arise is as to the measure of damages.

Proof of possession and uninterrupted use of the landings, would have been sufficient to sustain this action: Trotter *v.* Harris, 2 Y. & J., 285 ; a grant of a privilege of landing upon the land of another is presumable from a use of it for a long time: Bird *v.* Smith, 8 Watts, 434. The injury suffered by the plaintiff was different in kind, she had an exclusive right of ferriage, which the construction of the railroad rendered it impossible to exercise when the water was above a thirteen feet stage ; this certainly was an injury peculiarly different in character from that sustained by any other person having the right to navigate the Ohio river at this point: Art. XVI., § 8, of the Constitution is here applicable: City of Reading *v.* Althouse, 12 Norris, 400 ; Pusey *v.* Allegheny City, 2 Out., 522, there being no special remedy provided by law, case is a proper form of action: Patent *v.* Phila. & Reading R. R. Co., 14 W. N. C., 550. The rule of damages was correct: Field on Damages, §§ 20, 182; Schuylkill Navigation Co. *v.* Farr, 4 W. & S., 375 ; Same *v.* Thoburn, 7 S. & R., 411.

Mr. Justice TRUNKEY delivered the opinion of the court, January 4th, 1886.

The Act of April 16th, 1863, vested in William McKee the right to maintain a public steam ferry over the river Ohio, from where his landing was at the date of the Act, near Saw

Mill Run, in West Pittsburgh, to his landing at the termina-tion of Chartier street in the city of Allegheny, with exclu-sive right to said landings, and the river between the same as a public ferry; and all persons are prohibited from using said river for the purpose of a ferry within three hundred yards above and three hundred yards below said landings. This right is said to be now vested in the plaintiff.

It is plain from the testimony on both sides that no title in fee simple to a landing was ever vested in the owner of the charter, and that the respective owners leased land for the purpose of a landing until 1878, at which date the owner began to occupy a part of Main street for a landing. If the plain-tiff has a right to use that street which is not common to all other persons, no sign of her title to such right appears in the evidence. She has an exclusive right to use the river in that locality for a public ferry, but for aught that appears, other persons navigating the river for other purposes have as good right as she, to stop at the river terminus of that street and pass over it. Both the river and street are public highways.

McKee, or any person holding under him, might have ac-quired a landing in fee, or by perpetual lease, had any owner of the shore been willing to so sell or lease, but no right to a landing was conferred by the legislative grant; nor had the legislature power to give the right to take land for such pur-pose without the owner's consent, or without first making compensation or giving security for payment of its value to the owner. The owner of the soil has the exclusive right of landing on his own soil, on the banks of all navigable rivers: Cooper v. Smith, 9 S. & R. 26. In that case the charter con-tained a provision that the grantee might "make or cause to be made a good and sufficient landing on both sides of the river Youghiogheny, at or near the place where he hath for-merly kept the ferry;" and it was ruled that no right was conferred to make a landing on the soil of the riparian owner, without his consent, not even on the public road. The prin-ciple there decided has been repeatedly recognized in this Commonwealth, and never denied.

As the case stands, when this suit was begun and when the defendant built the railroad, the plaintiff owned no right of landing unless under a lease for years. Her charter vests no right to take land without the owner's consent, and if no statute exists authorizing her to take it without such consent upon making compensation, she could only acquire a landing by contract. If she held no landing by lease or other con-tract, how can she maintain a private action against the de-fendant for constructing and maintaining a public highway on the bank of a navigable river? The fact that she alone

has the right to a public ferry for six hundred yards along the bank, and uses part of a public street for a landing, shows that the consequent damage to her may be greater in degree than to others, but does not show that the injury is different in kind, or that the rest of the public may not suffer in the same way: Blackwell *v.* Old Colony Railroad Co., 122 Mass. 1. Her right to navigate the river with a public ferry, without competition, is the extent of her grant; in all other respects she is one of the public, using the river subject to the restrictions made by the commonwealth, and has no right not common to other persons. If it be true that the defendant built its roadway along the south bank of the river, in the city of Pittsburgh, without authority of law, as the plaintiff alleges, in absence of a right of landing injured by the nuisance, she has suffered no special injury entitling her to a civil remedy: Buck Mountain Coal Co. *v.* Lehigh Coal & Nav. Co., 50 Pa. St., 91; Cumberland Valley Railroad Co.'s Appeal, 62 Id., 218; Canal Co. *v.* Graham, 63 Id., 296. If the road was built with authority of law, then the highway was lawfully built alongside of another highway, and all persons using the latter suffer the same kind of benefit or injury from the construction of the former, though the degree of benefit or injury may be different. In such case, if navigation has been impeded to any extent, it has been done by authority of the Commonwealth. The injury is of the same nature as as injury done by the building of a bridge over a navigable river, which to some extent impedes navigation. If in the building of a railroad a landing be injured or destroyed, the owner is entitled to compensation. The owners of the soil, and their tenants holding under leases, may be specially injured. If the plaintiff held a leasehold landing which was injured by the building of the road, she is entitled to recover for the injury done by the diminution in value of that estate. Both tenant and landlord may have been injured.

The plaintiff seems to contend that, by reason of the defendant's liability to make just compensation for property taken, injured, or destroyed in the construction or enlargement of its works, it is liable for an injury resulting from the crossing of a public street, to the mere franchise of a public ferry, unconnected with the right of landing, the injury being diversion of business from the ferry. Had the owners of the shore refused to permit McKee, or those holding the charter, to land on their soil, prior to the opening of Main street, the franchise probably would have been worth little, or had they refused to renew leases the loss to the owner of the franchise would have been heavy, yet nobody would have been liable for damages. No legal wrong would have been done McKee had

the riparian owners kept him off their lands. Now the only legal injury, if any, is to a leasehold estate. At the end of the plaintiff's term, her right of landing ended. Because of her franchise on the river she has no special right on the street. For the mere inconvenience to the public on a public street or road, resulting from a railroad crossing, at grade or otherwise, an action will not lie at the suit of a private person. The inconvenience to the public caused by building a railway over a street, or the convenience resulting from building a bridge over a river, though diverting business from a ferry, is not an injury to private property for which the owner of the ferry may recover damages. A lawful construction of a railway over a street, or of a bridge over a river, though likely to diminish the receipts of a ferry, is not injury to private property in the franchise for the ferry, within the intendment of the Constitution.

The numerous points presented by the respective counsel were answered as follows: "In so far as these points are affirmed in the general charge they are affirmed, and in so far as they are denied in the charge they are refused." Every principle contained in the points not repeated in the charge must be taken as denied. As the charge was brief, it is not difficult to ascertain what points were denied; it might be difficult to say how the jury understood the answers.

The defendant's first point, namely, "That the Act of April 16th, 1863, by which the ferry claimed by plaintiffs was created, only gives to the owners of the ferry the right to maintain a ferry between certain points and to take tolls therefor, and did not give to William McKee, or the plaintiffs claiming under him, any right or title to the landing above low-water mark at the terminus of the ferry," ought to have been affirmed. So much of the charge as was inconsistent with that point was error.

A lease was adduced in evidence by the defendant, from James Wood, to the plaintiff, for a piece of ground to be used for a ferry landing, for the term of five years from April 1st, 1877, and there was some oral testimony tending to show that it was surrendered before the end of the five years, but the fact was for the jury. Therefore the defendant's second point was rightly refused. If there was evidence to satisfy the jury that the plaintiff had an interest in land occupied by the defendant, it was immaterial by which party it was offered.

Had the words " and the verdict must be for the defendant " been omitted from the defendant's third point, it should have been affirmed. The proposition, " that even if the construction of defendant's railroad across Main street is an obstruction to travel thereon, still such obstruction would be a public

nuisance, and the plaintiffs have not shown any special or peculiar injury not common to the public and cannot recover for such obstruction," was correct; but it did not follow that the verdict must be for the defendant. The plaintiff could not recover for such obstruction, but might on other ground.

On the question of damages the plaintiff prayed instructions that the plaintiff was entitled to recover all damage done to her property in the ferry and landing by the construction of the railroad; and the defendant prayed instruction that the plaintiff could only recover for the actual loss she had sustained after the construction of the railroad until November, 1878; that she had shown no loss within that period; and that she could not recover damages based on permanent depreciation. The learned judge charged as follows:—

"You can only give damages for the loss of Mrs. Jones's business while she owned and ran it. She sold the boat and did not run the business, I think, after November, 1878. . . . . That (the franchise) Mrs. Jones still owns and whatever damage has been caused to that franchise by the building of this road up to the time of bringing her suit, in 1884, she has a right to recover because it is an injury to her right, a right purchased by her, or given to her, it makes no difference which. The rule of damage is this: what has the value of her franchise, the franchise alone, been injured by the construction of that railroad? It is alleged that it would not sell for as much as before the construction of the road by reason of this obstruction. . . . . You will determine from the evidence how much less the franchise is worth; how much the market value of it has been lowered by this obstruction; whatever that is the plaintiff would be entitled to recover. . . . . The plaintiff still owns the franchise, and the entire damage to it up to the time of bringing her suit she is entitled to."

Thus the jury were instructed to allow damages to plaintiff for loss of business from the time of occupancy by defendant till November, 1878; to allow damage caused to the franchise up to the date of suit in July, 1884; to determine how much less the fanchise is worth by reason of the obstruction, and that is what the plaintiff is entitled to recover; and that she is entitled to the entire damage to her franchise up to the time of bringing her suit. Were anything wanting to render it uncertain whether the jury were instructed to find the total depreciation in value of the franchise, or only the. depreciation up to the time the suit was begun, it may be found in the admission of testimony to show "the difference between the value of the ferry franchise before the construction of the railroad, and its value after the railroad was constructed, as affected by it." The admission of such testimony was objected

[Shuster v. Kaiser and Wife.]

to, but was received all through the trial. The plaintiff made no effort to prove the amount of injury to the franchise up to the date of bringing suit; she proposed to prove the total damage to her perpetual franchise, and that the court allowed. It is unnecessary to inquire how the jury could determine the damage for a few years, when the witnesses testified to damages respecting a franchise for all time.

It has already been remarked that the plaintiff can recover no damage for the alleged injury to the franchise only, unconnected with a landing. The testimony which was offered to show such damage was inadmissible, for although the franchise was perpetual there is no evidence of a right of landing for more than a few years. The term of the lease expired April 1st, 1882. In case that lease was in force when the defendant took the land, what was the value of the leasehold for its purpose, until the end of the term? How much less was it worth as affected by the railroad? The difference is the amount of the plaintiff's damage. The counsel for plaintiff are right in their position that she is entitled to recover in this action all the damages resulting from the acts of the defendant. She owned and used the ferry when the railroad was built, and it is manifest that the occupancy by the defendant is permanent. In such a case as this the damages should be determined on similar principles as govern in proceedings under the general railroad laws where land is taken, injured, or destroyed by the company, and the parties are unable to agree as to the amount of damages. It would be grievous to the parties, certainly grievous to one or the other, if the damages could not be finally settled in one action. The first, thirteenth, and fourteenth assignments of error are sustained.

Judgment reversed, and *venire facias de novo* awarded.