## McGettigan v. Potts, Appellant.

[Marked to be reported.]

| | |
|---|---|
| 149 | 155 |
| 179 | 35 |
| 149 | 155 |
| 181 | 136 |
| 149 | 155 |
| 200 | 488 |
| 149 | 155 |
| 201 | 71 |
| 201 | 76 |
| 201 | 174 |
| 149 | 155 |
| 22 SC | [1]296 |
| 149 | 155 |
| e 25 SC | [1]615 |
| 149 | 155 |
| 213 | [1]258 |
| 213 | [1]259 |
| 149 | 155 |
| 32 SC | [1]317 |
| 32 SC | [1]318 |
| 32 SC | [1]319 |
| 32 SC | [1]320 |
| 32 SC | [1]321 |
| 32 SC | [1]322 |
| 149 | 155 |
| 222 | [1]498 |
| 149 | 155 |
| 40SC[2]242 | |

*Lateral support—Removal of—Measure of damages.*

The rule that an owner is entitled to lateral support for his ground, extends only to support for the ground in its natural state, and does not include such support for the protection of buildings or other structures placed upon it. Where by reason of an excavation without negligence made by the defendant on his own land, the land of the plaintiff sinks or falls away, the measure of damages is, not the diminution in value of the lot of the plaintiff by reason of the acts of the defendant, but the amount of the injury actually done to the plaintiff's land.

The measure of damages, where land is taken by right of eminent domain, which is the difference between the value of the whole of the plaintiff's land before the taking and its value immediately afterwards, has no application in such a case.

*Evidence—Striking out—Withdrawing juror.*

Where evidence of damage has been admitted, based upon defendant's negligence, and the court subsequently rules that there is no evidence of such negligence to submit to the jury and strikes out the evidence as to damages, the defendant is not entitled to have a juror withdrawn and the case continued.

Argued Feb. 4, 1892. Appeal, No. 116, Jan T., 1892, by defendant, E. Channing Potts, from judgment of C. P. Montgomery Co., June T., 1890, No. 51, on verdict for plaintiff, George McGettigan. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for damages to plaintiff's real estate by removing its lateral support.

On the trial before SWARTZ, P. J., it appeared that the defendant, in removing the fire clay there, dug a pit entirely on his own land, and that there was a cave-in.

Under objection, plaintiff was asked the following questions: "When did you observe this crack that you say reached from the place of excavation up to and under the front door of your house?" To which the witness replied: "The way it is with this hole, there are two trees; one tree stands in the corner and one a piece away from it that hold the ground together. This wall has moved out further from the fence than where it used to be. These trees are dragging the dirt with it. It is too heavy

pressure there now; to the best of my opinion, the way it looks now, if it is left until spring it will be worse than it is now." [2]

Q. " You are not able to tell how much injury is done to your lot; we do not care how you look at it, whether you take it from the fact that would have to restore it. We do not care how you look at it, but are you able, looking at it in any reasonable way, to give an estimate of the damage to your lot?" A. " About $200." [3]

Thomas H. Lynch, a witness for the plaintiff, was asked: " Aside from that how much has the property depreciated in value by reason of the damage done to the house, the fence and the chicken house?" Objected to.

The Court: " This evidence is allowed on the ground that it is competent if it is followed up by evidence showing negligence in the removal of lateral support."

A. " Between $400 and $500 as I said before to the property." [4]

At the conclusion of the evidence for the plaintiff, defendant moved to strike out all the testimony relating to the injury to the freehold, except that which related to the lateral support of the grade in its natural state, which motion the court allowed on the ground that there was no proof of negligence to go to the jury. The defendant also moved that a juror be withdrawn and the case continued on the ground that the evidence offered by the plaintiff in regard to negligence had entered into the jury box and had more or less effect upon the jury. This motion the court refused. [13]

Defendant's 1st, 2d, 3d, 6th and 7th points and the answers thereto were as follows:

" 1. That the plaintiff is not entitled to recover in this case for the difference in the market value. He is limited to his actual pecuniary loss. *Answer:* This is true, for the market value of his property may be affected by the injury to the improvements or other cause, but the plaintiff can recover for the diminution in the value of his lot from the injuries to the lot, the ground and soil, occasioned by the removal of the lateral support." [6]

" 2. That the plaintiff is not entitled to recover as for a permanent injury, but is only entitled to recover for the injury suffered actually up to April 7, 1890, or the date of the impetration of the suit. *Answer:* This is refused." [7]

" 3. That there can be no recovery for any crack in the plaintiff's ground, because the same, even if it existed, may have been produced partially on account of the superadded weight the plaintiff had on his land in the shape of his house. *Answer:* This is refused. But if the jury find that the superadded weight caused the crack, or contributed to the crack, the plaintiff is not entitled to recover for this injury; I mean the injury represented by the crack." [8]

" 6. That for ordinary washing of his soil the plaintiff is not entitled to recover. He *is* only entitled *to* the actual value of the soil, and not the market value of the plaintiff's land. *Answer:* The first part of the proposition is true, for the ordinary washing of the soil the defendant is not liable, if such washing was not occasioned by the removal of the lateral support. As to the second part of the proposition, we are sure that the plaintiff is entitled to the diminution in the market value of his lot occasioned by the removal of the lateral support, and not the difference in the market value of his whole property including the improvements." [9]

" 7. That all the witnesses for plaintiff gave their estimates of the market value as a basis of damages; that such testimony cannot be received, and there being no other evidence of damages, the plaintiff cannot recover, and the verdict must be for nominal damages. *Answer:* This is refused, but if you find that you cannot ascertain the damages from the evidence laid before you under the measure of damages that I have given to you, then you may render such verdict." [10]

The court charged that there was no evidence of negligence on the part of Mr. Potts and that he was not liable for any injury that may have resulted to the building and improvements by reason of the removing of the lateral support; and in part as follows:

[" What is the measure of damages? It is the diminution in the value of this lot by the injury done by the reason of the removal of the lateral support. It is the injury to the lot, the diminution of the value of the lot, outside of and unaffected by any of the improvements that may be upon the lot. How much has that lot been injured in dollars and cents by reason of the slide that may have been occasioned and by reason of the cracking? . . . . What was the difference between the mar-

ket value of that property before the injury was inflicted and the market value of the property after the injury was inflicted? But it is not the difference in the market value of the property as a whole; of the house and lot. How has that lot been diminished in value, if any, by reason of the injury occasioned by the removal of the lateral support; whatever that diminution is would be compensation to which the plaintiff is entitled in this case."] [11]

*Errors assigned*, among others, were (2–4) the admission of the evidence as above, quoting it; (6–10) the refusal of defendant's 1st, 2d, 3d, 6th and 7th points, quoting them; (11) the portion of the general charge above in brackets, quoting it; (13) refusing defendant's motion to withdraw a juror and continue the case, quoting it.

*Charles Hunsicker*, for appellant.—The true measure of damages should be, and is, the value of the soil that slipped into the pit: Gilmore v. Driscoll, 122 Mass. 199; Wheatley v. Baugh, 25 Pa. 528; Haldeman v. Bruckhart, 45 Pa. 514; Richart v. Scott, 7 Watts, 460; Humphries v. Brogden, 12 Q. B. 739. In the present case, the defendant did not dig within four feet of the division line and he erected a retaining wall on his own land; had the land of plaintiff been in its natural state, it would not have fallen into the pit.

*H. M. Tracy*, *N. H. Larzelere*, for appellee.—The measure of damages is the diminution of the value of the lot by reason of the acts of the defendant: Washburn on Real Estate, vol. 2, page 380; Richart v. Scott, 7 Watts, 460; McGuire v. Grant, 25 N. J. Law, 356; Foley v. Wyeth, 2 Allen, 131; Gilmore v. Driscoll, 122 Mass. 199; Moellering v. Evans, 121 Ind. 195; Altwater v. Woods, 1 W. N. C. 23.

The striking out of the evidence of negligence cured any error in its admission: Railroad Co. v. Butler, 57 Pa. 335; Delaware & Hudson Canal Co. v. Barnes, 31 Pa. 193.

OPINION BY MR. JUSTICE GREEN, May 9, 1892:

The learned court below allowed a recovery of damages in this case, upon the rule that applies in cases where property is taken or injured by a corporation in the exercise of the right of eminent domain. We have very recently had occasion to consider this subject in the case of Robb v. Carnegie, 145 Pa. 324. We there held that that rule does not apply in litigations

between private persons where the injury complained of affects the land of the plaintiff. The rule, in cases where land is taken or injured by corporations in the exercise of their right of eminent domain, is to allow the difference between the value of the whole of the plaintiff's land before the injury was inflicted, and its value immediately after. That rule is adopted because the corporation has the lawful right to inflict the injury, and the damage done is permanent in its character, and requires a compensation which shall be the price of the privilege to continue it. But in the ordinary actions between private persons to recover damages for trespass upon the land of the plaintiff, the injury is a wrong which is to be compensated by allowing the actual damage sustained by the plaintiff up to the time of suit brought. This compensation is to be ascertained, not by showing the difference in the market value of the land before and after the injury, but by proving what was the precise and actual damage done by the defendant to the plaintiff's land. In the particular class of cases here involved, the right to compensation is more than usually restricted because of the peculiar manner in which the injury is inflicted, and on account of the relative rights of the litigant parties. The defendant has a perfect legal right to dig down on his own land to excavate valuable clay or minerals at any depth. It seems that he kept off the line which divides his land from that of the plaintiff four feet, and built up a retaining wall seven feet thick at the bottom and two feet at the top. The precautions taken by the defendant in digging his pit were such that the learned court below charged the jury that there was no evidence of negligence in the digging, and that there was no right of recovery on that ground. In Richart v. Scott, 7 Watts, 460, this court held that the first builder upon adjoining lots in a town is bound to use suitable materials and build them skillfully in the foundation and wall of partition; for if, upon the excavation for, and construction of, a house upon the adjoining lot, notwithstanding the use of proper and ordinary care and diligence, the first walls should fall in consequence of their defects, it must be regarded as damnum sine injuria. The action was brought to recover damages incurred by the adjoining owner's digging out foundations upon his land, so that the building on the plaintiff's land fell into the defendant's excavation. The defendant's digging was done with ordinary care and diligence, and it was

held there could be no recovery by the plaintiff. All the reasoning of the opinion proceeded upon the idea that the adjoining owner, when he came to exercise his right to excavate and build, was only bound to use ordinary care and diligence in conducting his excavation, and if he did this he was not responsible for the fall of his neighbor's building.

The rule that an owner is entitled to lateral support for his ground extends only to support for his ground in its natural state, and does not include such support for the protection of buildings or other structures placed upon it. This rule is well established, both in the English and American courts. It has been exhaustively considered in the case of McGuire v. Grant, 1 Dutcher (N. J.), 356, and Gilmore v. Driscoll, 122 Mass. 199. The Chief Justice of the Supreme Court of New Jersey, in delivering the opinion in the former case, said: " It is well settled that, where the owner of a lot builds upon his boundary line and the building is thrown down by reason of excavations made upon the adjoining lot (in the absence of improper motive and carelessness in the execution of the work), no recovery can be had for the injury done to the building. . . . But the cases denying the right of recovery under such circumstances are so numerous, and the modern cases so uniform, that the question must be considered as finally at rest, so far as authority can settle it," citing numerous cases in support of the doctrine. The opinion then proceeds to discuss, at much length, the question whether the same principle applies to injuries done to the soil in its natural condition, with no buildings erected upon it, and concludes, that for such an injury there is a right of recovery, whether there be negligence or not on the part of the defendant, and that the measure of damages in such cases is the diminution in the actual value of the land injured. This conclusion is thus expressed: " The decided weight of authority and sound principle concur in support of the position that there is incident to land in its natural condition a right to support from the adjoining land; and that, if the land sinks or falls away in consequence of the removal of such support, the owner is entitled to damages to the extent of the injury sustained. The measure of damages in such case is not what it will cost to restore the lot to its former situation, or to build a wall to support it, but what is the lot diminished in value by reason of the acts of the defendant."

In the case of Gilmore v. Driscoll, 122 Mass. 199, a most elaborate discussion of the whole subject was presented in the opinion delivered by Mr. Chief Justice GRAY, in substantial concurrence with the opinion in McGuire v. Grant, but with a different result as to the measure of damages in those cases where only the land of the plaintiff, in its natural condition, is injured. His conclusions are thus expressed : " But in the case of land, which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor ; and if the neighbor digs upon or improves his own land so as to injure this right, he may maintain an action against him, without proof of negligence. But this right of property is only in the land in its natural condition, and the damages in such an action are limited to the injury to the land itself, and do not include any injury to building or improvements thereon." Numerous authorities, in the course of the opinion, are cited in support of this doctrine, and we are satisfied that it is the correct rule to apply in such cases.

On the question as to the measure of damages, Chief Justice GRAY reached a conclusion which we think is more definite and less liable to misunderstanding in its practical application than the one announced in McGuire v. Grant. After stating that the plaintiff's bank was left in such condition, that, by the effect of rains and frost, it was rendered insufficient to hold the soil of the plaintiff in its natural condition, he proceeds thus : " The necessary inference is that by the operation of natural and ordinary causes upon the land as it was left by the excavations of the defendant, and which he took no precaution to guard against, part of the soil of the plaintiff's land slid and fell off ; and for the injury so caused to her soil this action may be maintained. But she cannot maintain an action for the injury to her fences and shrubbery, because her natural right and her corresponding remedy are confined to the land itself, and do not include buildings or other improvements thereon." . . . " It is agreed that the ' damages occasioned to the plaintiff by loss of, and injury to, her soil alone, caused by the acts of the defendant, amount to ninety-five dollars.' We are of opinion that she can recover that sum and no more. She is clearly not entitled to recover the cost of putting her land into, and main-

taining it in, its former condition, because that is no test of the amount of the injury: McGuire v. Grant, 1 Dutcher, 356. She cannot recover the difference in market value, because it does not appear that that difference is wholly due to the injury to her natural right in the land; it may depend upon the present shape of the lot, upon the improvements thereon, or upon other artificial circumstances, which have nothing to do with the natural condition of the soil."

The agreed statement of facts, upon which the court acted, had found that the damages caused by the injury to, and loss of, the soil alone was, $95.00, and that to restore the land to its former condition would cost $575, and to replace the fence and shrubs would cost $45.00 more. It was also further agreed that the difference in market value of the plaintiff's lot, as affected by the defendant's act, would be $620. Of these several methods of ascertaining that loss of the plaintiff which the law would recognize, the first one above stated was adopted. That, we consider, was the proper measure of damages in that case and in this. To hold that the proper measure of damages is the diminution in the value of the lot, as affected by the acts of the defendant, is, practically, to hold that the measure is the difference between the market value of the land before and after the injury, which, as we have before seen, and have recently decided, is not the true measure in litigations between private parties. In the ordinary actions of trespass upon land, the measure is the amount of the injury actually done to the plaintiff's land, and we see no reason to depart from that rule in this case. As there was no cutting or loss of timber, and no removal of any mineral, and as there is no liability for injury to buildings or fences it would seem that the only element of damage appearing in the testimony is the loss of the soil. We do not, however, prejudge that question. If there were other elements of actual damage to the plaintiff's land, they should be considered, but not, as we think, on the principle of allowing the difference in market value, either of the lot with the buildings, or without them, before and after the injury, or by determining its diminution in value. We sustain the second, third, fourth, sixth, seventh, eighth, ninth, tenth and eleventh specifications of error. The other assignments are dismissed.

Judgment reversed, and new venire awarded.