## McClelland *v.* Schwerd, Appellant.

*Lateral   support—Land—Damages.*

In the case of land which is fixed in its place each owner has the absolute right to have his land remain in its natural condition unaffected by any act of his neighbor; and if his neighbor digs upon, or improves his own land so as to injure this right, he may maintain an action against him, without proof of negligence; but this right of property is only in the land in its natural condition, and the damages in such action are limited to the land itself, and do not include any injury to buildings or improvements thereon.

The cost of restoring the land to its original condition, or of repairing by grading and erecting a retaining wall, is not to be taken as the measure

of damages, unless it be shown that such cost would be less than the amount of diminution in value if nothing be done.

Where damage to the land by withdrawal of lateral support is both permanent and complete, the owner is entitled, apart from buildings, to have his damages assessed as in the case of any other permanent injury to the land in its natural state.

In an action to recover damages for injuries to land by the withdrawal of lateral support, it is reversible error to admit and submit to the jury for their consideration for any purpose, evidence of the depreciation in the market value of lot as a whole, including the buildings.

In such a case evidence as to the cost of putting the lot as far as possible, in as good a condition as it was before, is relevant only for the single purpose of showing that the injury was permanent, in the sense that it was irremediable except at a greater cost, than the depreciation in the value of the lot if left in its unrestored and unrepaired condition.

The defendant in such a case is not entitled to instruction that the damages could not exceed the difference in the value of plaintiff's lot before and after the excavation.  He is entitled to instructions that in the event of the jury finding that the injury to the lot was permanent and complete, the damages could not exceed the difference between the value of the lot without the improvements immediately before the subsidences of the soil, and its value afterwards.

Argued April 11, 1906.   Appeal, No. 40, April T., 1906, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1903, No. 65, on verdict for plaintiff in case of Maggie J. McClelland v. A. H. Schwerd.   Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ.   Reversed.

Trespass to recover damages for land, alleged to have been caused by withdrawal of lateral support.   Before MACFAR-LANE, J.

The facts are stated in the opinion of the Superior Court.

At the trial J. F. McClelland was asked this question.

" Q. Is your property in its present condition as valuable as it was before the slip ? "

Objected to as incompetent and irrelevant.

The Court: We will hear whether it has been damaged at all; not what the value was.

Objection overruled and bill sealed for the defendant.

Question read to witness.

" A. No, sir; it is not in a good condition, of course.

Q. From your investigation, and the bids that you have taken,

will you state what it will cost to as nearly restore the property to its prior condition as is possible under the circumstances?"

Objected to as incompetent and irrelevant.

The Court: Do you object to his incompetency, or the incompetency of the question?

Mr. Petty: I object to the incompetency of the evidence.

Objection overruled and bill sealed for defendant. [1]

" A. From the bid I received—"

Objected to.

Objection sustained.

Mr. Castle: You are simply to answer the question, what will it cost?

A. " $1,750."

David Brubaugh, a witness for the plaintiff, was questioned as follows:

" Q. What in your judgment is the only thing to do to that property to partially restore it, or at least to stop the destruction of it?　A. There would have to be retaining walls put in and regraded.　Q. What will be the cost of doing that work?"

Objected to.

The Court: I will overrule the objection and seal a bill for the defendant, but it must be followed up by evidence as to the other element of damage.　Exception. [2]

" A. My estimate was $1,750.　Q. Tell us what you did for that.　A. I proposed to put in the necessary retaining walls and put the ground, the soil and ground, in as good shape as possible.　Q. Do you know anything about the values of property in that neighborhood?　A. I don't."

Defendant presented this point:

3. If the lot of ground of the plaintiff is not wholly destroyed, the damages to be recovered cannot exceed the difference in value of the lot without improvements before the excavation made by defendant, and its value as affected by said excavation.　*Answer:* Refused, as there was no evidence of the difference in value. [4]

The court charged in part as follows:

[While there is some evidence here that cropped out—most of it I believe on cross-examination—as to the difference in the

value of the property, that is not the basis upon which you could render a verdict. It may possibly throw some light, it may help you in arriving at some conclusions as to what the actual damage is, but it is not the proper measure of damage, and so the testimony of the plaintiff's husband, Mr. McClelland, and the testimony of Mr. Gibson, the real estate man, which is based upon that theory, is to be taken by you only to help you to understand upon what ground they judged the damage. The one placed it at $2,000, and I forget what the other said. The same remark applies to the evidence as to the putting up of this wall. The cost of the putting up of a wall is not the measure of damage, but it is some evidence helping to enlighten you upon the whole situation. What you are to get at is what is the actual loss, what is the actual damage.] [5]

*R. B. Petty*, with him *A. H. Moeser*, for appellant, cited: McGettigan v. Potts, 149 Pa. 155; Gilmore v. Driscoll, 122 Mass. 199; Jones v. Greenfield, 25 Pa. Superior Ct. 315.

*Frank W. Jarvis*, with him *Homer L. Castle*, for appellee, cited: Ruppert v. West Side Belt R. R. Co., 25 Pa. Superior Ct. 613.

OPINION BY RICE, P. J., February 25, 1907:

The plaintiff and the defendant own adjoining lots in the city of Allegheny, extending from McClure avenue to Newburn avenue. The lots rise at an angle of about forty-five degrees from McClure avenue for a distance and then extend back upon a level to Newburn avenue. On this level portion of the plaintiff's lot a frame dwelling stood, which was reached from McClure avenue by flights of steps. The defendant desired to erect buildings on his lot fronting on McClure avenue, and for this purpose made an excavation to the grade of the street along the front of his lot and extending back a considerable distance. It is alleged that a period of four years was occupied in the excavating; that at the end of the first two years the first slip occurred, which was a break running across the property of the defendant and into and across the property of the plaintiff; that after that break the defendant undertook to hold

the bank by a barricade, but it was not sufficient, and about a year later there was a second break, which carried barricade and soil down into the street, but without injuring the building; that the defendant then built a new wall of concrete, extending across the excavation on his own lot to the line of the plaintiff's lot, with a wing wall along plaintiff's lot to the street line, which wing wall now supports the embankment, and "for practical purposes," the plaintiff's counsel concedes, "has stopped further breaks." This was the condition of the lot at the time of the trial, and no question was raised there or upon the argument here as to the admissibility under the pleadings of the proof of the facts above recited. The case was argued upon the theory that the question is as to the proper measure of damages, taking into consideration the falling away of the soil which occurred after as well as before suit brought, the condition in which the land was left, and the concession above alluded to as to the adequacy of the present retaining walls. We shall dispose of the case upon that theory.

As is well shown by the cases collected in the valuable note to Kansas City N. W. R. R. Co. v. Schwake, 68 L. R. A. 673, there is a difference of opinion as to the nature of what is commonly called the "right to lateral support." One view is that there is no absolute right to the support of adjacent land, independent of acquired easement, that the removal of the soil constitutes in itself no invasion of any property right of the adjoining owner, that the only right he has in respect of such action is the common right not to be disturbed in the enjoyment of his own land by any use which the adjoining owner may make of his. But according to the doctrine frequently expressed in the decisions of the courts of Pennsylvania, and of many other states of the union, there is incident to land in its natural condition a distinct right to support from the adjoining land; it is denominated the "absolute right to lateral support," and is declared to be "an incident to the land, a right of property necessarily and naturally attached to the soil:" Wier and Bell's Appeal, 81* Pa. 203, 208; McGettigan v. Potts, 149 Pa. 155; Matulys v. Phila. & Reading Coal & Iron Co., 201 Pa. 70; Fyfe v. Turtle Creek Boro., 22 Pa. Superior Ct. 292; Jones v. Greenfield, 25 Pa. Superior Ct. 315. The distinction is of importance when the application of the statute of limitations is

involved, as in Noonan v. Pardee, 200 Pa. 474, and in the consideration of some phases of the general subject of the measure of damages, as for example the question of prospective damages.   But notwithstanding this difference of opinion as to the underlying principle, it is almost universally held by the courts of this country and of England, that if one excavates his land, and in consequence of the removal of this natural support the adjoining land of his neighbor falls, the latter has a right of action, although the excavation was not carelessly or unskillfully performed.   In McGettigan v. Potts, 149 Pa. 155, the following was quoted as the correct rule : " But in the case of land which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor; and if his neighbor digs upon or improves his own land so as to injure this right, he may maintain an action against him, without proof of negligence.   But this right of property is only in the land in its natural condition, and the damages in such action are limited to the land itself, and do not include any injury to buildings or improvements thereon : " Gilmore v. Driscoll, 122 Mass. 199.   From another Massachusetts case, Foley v. Wyeth, 84 Mass. 131, Mr. Justice BROWN quoted approvingly in Matulys v. Phila. & Reading Coal & Iron Co., 201 Pa. 70, as follows : " It is a necessary consequence from this principle " (the absolute right of an adjoining owner of land to lateral support for it in its natural state) " that, for any injury to his soil resulting from the removal of the natural support to which he is entitled, by means of excavation on an adjoining tract, the owner has a legal remedy in an action at law against the party by whom the work has been done and the mischief thereby occasioned.   This does not depend upon negligence or unskillfulness, but upon the violation of a right of property which has been invaded and disturbed.   This unqualified rule is limited to injuries caused to the land itself, and does not afford relief for damages by the same means to artificial structures.   For an injury to buildings, which is unavoidably incident to the depression or slide of the soil on which they stand, caused by the excavation of a pit on adjoining land, an action can only be maintained when a want of due care or skill, or positive negligence, has contributed to produce it."

It follows logically that, if it be built upon, the diminution

of the value of the lot as a whole, including the buildings, in consequence of the excavation and the falling of the soil, or either, is not a reliable measure of damages, in the absence of negligence.   For, while the fact that the lot is built upon will not prevent recovery, if the weight of the structures did not contribute to the falling away of the soil, yet the same principle which prevents recovery for a physical injury to the buildings also prevents recovery for a depreciation of their value considered either separately from or as part of the value of the land.

There are obvious objections to a general rule making the cost of putting the land into, and maintaining it in, its former condition, the ordinary measure of damages.   In many cases this would be impossible, except at a cost which would be wholly out of proportion to the actual damage.   As was said in McGuire v. Grant, 25 N. J. L. 356, it will frequently happen that the subsidence of land in a city, occasioned by the grading of adjacent lots, thus bringing the surface nearer the grade of the street, will but slightly diminish its real value. For these and other reasons, the decided cases generally concur in the conclusion that the cost of restoring the land to its original condition, or of repairing by grading and erecting a retaining wall, is not to be taken as the measure of damages, unless it be shown that such cost would be less than the amount of diminution in value if nothing be done.

The value of the soil displaced, if such value is to be computed upon the loose dirt and rock that have fallen, is not ordinarily a reliable test of the pecuniary injury ; and a careful study of the case of McGettigan v. Potts, which is sometimes cited for that purpose, shows that it establishes no such rule. It is true Mr. Justice GREEN suggested, although he was careful to say that the point was not positively adjudicated, that in the case then before the court, " it would seem that the only element of damage appearing in the testimony is the loss of the soil."   But to declare that under the testimony in a particular case the loss of the soil is the only element of damage, is not to declare that it is such in every case, or that in awarding compensation for the loss the direct injury to the lot from which it has been severed is not to be considered.   The soil that has been lost may have very little value as a distinct

marketable commodity, and a very considerable value to a proprietor when resting in its natural state in a lot of ground owned by him. If either value is to be taken as the measure of damages, it ought to be the latter, and one way to determine its value would be to ascertain how much less the land is worth in the market without it than it was with it. It seems too plain for argument that the above quoted remark of Justice GREEN was not intended, and cannot be made to serve, as a judicially established rule, that although the plaintiff's land is left in a broken and damaged condition by the falling away of the soil in consequence of the removal of the natural support to which it was entitled as an absolute right, yet he can recover only the market value of the number of cubic yards or cart loads of loose dirt that has fallen into the pit his neighbor has dug. Possibly there might arise a case in which the loss of the soil would be so insignificant, relatively, as not to appreciably affect the selling or rental value of the lot, or the owner's use and enjoyment of it. In such a case the market value of the lost soil, treated as a separate commodity, might be adequate compensation for the injury; but there is no natural or legal presumption, either prima facie or conclusive, that it would be such in all cases. We find nothing in McGettigan v. Potts which conflicts with this conclusion.

Unquestionably, the case is authority for the proposition, that if by reason of an excavation without negligence made by the defendant on his own land, the land of the plaintiff falls away, his right of recovery is restricted to the damages occasioned by the "injury to and loss of the soil alone." This, I venture to suggest, is but another form of expressing the rule heretofore alluded to, that it is only the injury to the land, distinct and apart from the buildings and other artificial structures erected thereon, of which the law takes cognizance, in the absence of negligence, and acquired easement. And it is quite clear from this and other decisions that if the injury be not permanent, the difference in market value, either of the lot with the buildings, or without them, before and after the injury, is not the proper measure of damages. In such case the injury is to be compensated by allowing the actual damages sustained by the plaintiff up to the time of suit brought, which in the absence of special circumstances, are usually restricted

to compensation for the diminished use or enjoyment of the property.

But there are expressions in the opinion of Mr. Justice GREEN which have been taken to mean that in no case of this kind can the diminution of the value of the land, without the buildings, in consequence of the injury to and loss of the soil, be taken as the measure of damages. As the case must go back for retrial it is proper that we should consider this question in the light of the very recent decision of our Supreme Court that Robb v. Carnegie, 145 Pa. 324, and McGettigan v. Potts, 149 Pa. 155, are not to be considered as establishing the doctrine that in no instance, and under no circumstances is depreciation of market value the measure of damages for an injury to real estate in an action between private parties : Rabe v. Shœnberger Coal Co., 213 Pa. 252. As shown at the outset of this opinion, we have before us a case where a jury would be warranted in finding, that in consequence of the withdrawal by the defendant of the natural support to which the land of the plaintiff was entitled, a considerable part of the soil has fallen away, and the lot has been left in a broken and damaged condition; that although the concrete walls which have been substituted by the defendant for the natural support have thus far prevented, and probably will continue to prevent, further lateral subsidence by reason of the excavation, yet the cost of remedying, by any method thus far suggested, the damage that had been occasioned in the meantime, or of restoring the land to its former condition, if that were possible, would exceed the diminution of the market value of the lot apart from the buildings and other structures, if permitted to remain in its present condition; in short, that the damage to the plaintiff's lot resulting from the defendant's acts is both permanent and complete ; by which last remark we mean that no further damage to the lots is to be expected. We do not say that a jury would be bound to find all these facts, but only that they could find them from the evidence produced at the trial. Upon such a state of facts, " it would be grievous to the parties, certainly grievous to one or the other, if the damages could not be finally settled in one action," as was remarked by Mr. Justice TRUNKEY in Pittsburg and Lake Erie R. R. Co. v. Jones, 111 Pa. 204. In the case of Rabe v. Shœnberger Coal Co., 213 Pa. 252, the subject

of the measure of damages for a permanent injury to real estate received elaborate consideration. The case is very pertinent, because the injury complained of was the withdrawal of subjacent support, resulting in the destruction of five springs, and the principal question was whether in awarding damages the aggregate value of the springs, as independent pieces of property, was to be given, or their destruction was simply one of the elements of depreciation to be considered in ascertaining the loss in the selling value of the whole property caused by the injury inflicted by the defendant. In the admission of evidence and in the instructions to the jury the learned trial judge followed the rule he understood to be laid down in McGettigan v. Potts that the depreciation of market value is not the proper measure of damages for an injury to real estate in an action between private parties. This was held to be error, and after an extended review of the authorities by Mr. Justice POTTER it was declared " that the sound rule is, that where there is a permanent injury to real estate, the extent of the damage caused thereby is to be measured by the resulting depreciation in the value of the property. Permanency is the proper test for the application of this rule." There is no ground for inferring from the authoritative exposition of the law that led up to this conclusion that while it is the proper test in an action for withdrawing subjacent support it is not so in an action for withdrawing lateral support. If such permanent injury as we have been considering has actually depreciated the land in value, why should not this be compensated in damages ? As was said in Seely v. Alden, 61 Pa. 302, it is difficult to give a good reason against it. " Compensation for the diminished enjoyment or use of the property for a certain number of years is no compensation for the diminished value of the estate itself." As " each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor," the conclusion seems irresistible that for a permanent injury to his land, apart from the buildings and other artificial structures thereon, resulting from a disregard of this right, and upon such a state of facts as we have set forth in this immediate connection, he is entitled to have his damages assessed as in the case of any other permanent injury to the land in its natural state.

In conclusion, we are of opinion that, in the absence of proof of facts sustaining the allegation of negligence, there was error in admitting, and submitting to the jury for their consideration for any purpose, evidence of the depreciation in market value of the lot as a whole, including the buildings. The learned judge very plainly instructed the jury that it was not the proper measure of damages, but said that it might help them " in arriving at some conclusion as to what the actual damage is." We fail to see how it could help the jury in this regard; it seems to us that it was more likely to confuse and mislead them.

The testimony of David Brubaugh (second assignment) relative to the cost ($1,750) of putting the lot, as far as possible, in as good condition as it was before, if admissible at all in the plaintiff's case in chief, was relevant only for the single purpose of showing that the injury was permanent, in the sense that it was irremediable except at a greater cost than the depreciation in the value of the lot if left in its unrestored and unrepaired condition. It should have been confined very strictly to the purpose above stated. And as it appeared subsequently by the testimony of the plaintiff's husband, which was the only testimony given by her witnesses upon the subject, that the value of the lot without the buildings before the excavation was only $1,000, it is manifest, we think, that the instruction, that while the cost testified to by Brubaugh was not the measure of damage, " it is some evidence to enlighten you upon the whole situation," was scarcely adequate.

The defendant was not entitled to instructions (fourth assignment) that the damages could not exceed the difference in value of plaintiff's lot before and after the excavation. If he had asked for instructions that in the event of their finding that the injury to the lot was permanent and complete, as heretofore explained, the damages could not exceed the difference between the value of the lot without the improvements immediately before the subsidence of the soil, and its value in its present condition, we think the instructions should have been granted. But that is not the way the point under discussion reads, and it is not clear that it is what the jury would understand it to mean. Therefore it was properly refused.

Judgment reversed and venire facias de novo awarded.